UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of J. NELSON ENTERPRISES, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>KIEWIT INFRASTRUCTURE WEST CO, a Nebraska corporation; and TRAVELERS CASUALTY & SURETY CO. OF AMERICA, a Connecticut corporation,<br><br>Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES** |

Plaintiff, United States of America, for the use and benefit of J. Nelson Enterprises, Inc. ("**JNE**"), alleges as follows:

**JURISDICTION**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the provisions of the Miller Act, 40 U.S.C. § 1331 *et seq.* This Court has pendent jurisdiction and supplemental jurisdiction over the state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1331, 1332, 1352 and / or 1367.

**VENUE**

2. The contract in question relates to work performed in Buckley, Washington, in Pierce County. Venue therefore lies in the United States District Court for the Western District of Washington pursuant to 40 U.S.C. § 3133(b)(3)(B) and 28 U.S.C. § 1391 *et seq.* because the Project is located in this Judicial District, and the events giving rise to the claims occurred in this District, *e.g.*, relating to the Mud Mountain Dam Fish Passage Facility pursuant to Contract No. W912DW18C0011 ("**Project**").

3. Pursuant to Local Rule 3(d)(1), this action should be properly assigned to the Tacoma Division, because the claims arose and the location of the Project is Pierce County, Washington. If not, in the alternative, this matter should be transferred to the Seattle Division if requested and if appropriate without impacting any other matters relating to the instant litigation.

**PARTIES**

4. At all times relevant, JNE was a Washington corporation, whose principal place of business is located in Orting Washington. JNE is and was duly registered with the Secretary of State and is otherwise in good standing to conduct business in this State. The Washington Department of Labor and Industries issued to JNE contractor's registration number JNELSNE973PW. Further, JNE has paid all fees and met all other prerequisites to maintain the present action without reservation.

5. At all times relevant, Defendant Kiewit Infrastructure West Co. ("**Kiewit**") was a corporation, organized and existing under the laws of the State of Nebraska, with its principal place of business in Omaha and / or Vancouver, Washington. Kiewit maintains

its registered agent in Olympia, Washington.  The Washington Department of Labor and Industries issued to Kiewit contractor's registration number KIEWIIW904M1.

6. Defendant Travelers Casualty & Surety Co. of America ("**Travelers**") is headquartered in Hartford, Connecticut. Travelers is authorized to do business as a surety upon bonds or undertakings in the State of Washington.

## FACTS

7. Based on information and belief, on or about March 14, 2018, Kiewit contracted with the US Army Corps of Engineers, who owns the Project ("**Owner**"), pursuant to Contract No. W912DW18C0011 ("**Prime Contract**"), which, among other things, obligated Kiewit to supply materials; such work in turn being subcontracted to JPE pursuant to a "Material Contract" Kiewit issued to JPE ("**Subcontract**").  According to Kiewit's Subcontract, JPE's subcontracted scope of work included "All fabrication, assembly, testing and delivery of all materials and equipment described in the Prime Contract Plan & Specifications for two (2) each [sic] Archimedes Screw Lifts ("ASLs') ("**Scope**"). Kiewit was responsible for providing all engineering, calculations, drawings, welder certifications, etc. prior to the ASLs leaving the shop.  Kiewit was also responsible for transport, storage and installation of the ASLs.  Kiewit agreed to notify JNE at least 24-hours prior to installation, to allow for JNE to be present during installation, though Kiewit never provided such notification.

8. On or about October 6, 2017, Kiewit obtained Miller Act Payment Bond No. 106867969[1] from Travelers ("**Bond**") in the amount of $112,000,000.00 as required for

---

[1] As to all numbers such as this or dates and the like that may contain scrivener's errors, Plaintiff request such errors be subject to amendment without prejudice to conform to the evidence as presented.

projects such as this.  Pursuant to the Bond, Travelers agreed to be bound "jointly and severally" with Kiewit, to make payment to all persons having direct contractual relations with Kiewit, or to any subcontractor of Kiewit, who furnish labor, material or both in the prosecution of the work provided for in the Prime Contract, in the event Kiewit failed to make prompt payment to such persons, which in this case includes JNE.

9.     On or about October 26, 2018, as stated on the Subcontract's first page Kiewit and JNE entered a Subcontract No. 2950 in the amount of $1,046,000.00 to perform JNE's Scope.  As part of the Subcontract, JNE signed a Contractor's Bond Waiver form. The parties also agreed that Kiewit would withhold 5% of any partial payment as retainage "until Final Payment."

10.    Kiewit agreed to pay all subcontractors, including JNE, who started its work on or about December 18, 202. In whole or in part, JNE completed its work on or about December 18, 2021.  Due to Kiewit's failure to pay in full, on or about February 16, 2022 JNE caused a Miller Act Claim Against Bond ("**Bond Claim**") to be lodged, sent via registered mail, return receipt requested.

10A.   Additional Facts: In November 2020, the Owner by and through representatives sent its independent inspectors to test the ASLs, which passed inspection and were commissioned immediately. In January 2021, the ASLs experienced excessive silt build-up in conjunction with excessive water levels and differentials between the water pool behind the ASLs and the grade of the ASLs' entrance, causing the ASLs to lift off the bell end of the support rotators while rotating, at no fault of JNE, causing a bow in the 52' length. This action in turn stressed the welds causing continuous tension and compression of each joint. Based on information and belief, the Owner contacted its design / engineering firm, and were told such

action would not affect the ASLs, which should continue running. JNE learned of this in July 2021. At that point JNE disagreed; excessive silt and elevated water levels must be remedied promptly. In August 2021, JNE was notified that at least one weld had cracked. Kiewit instructed JNE to undertake repairs approved by Kiewit.

11. Now, therefore, more than five months have passed since JNE completed its work, three months since it sent its Bond Claim to, among others, Travelers, and JNE remains unpaid in the principal amount of $101,124.49, subject to adjustment up or down to reflect accounting and other adjustments or credits ("**Debt Due**").

12. More than 90 days but less than one year have now elapsed since JNE's last date furnishing labor, materials and / or equipment to the Project.

13. All conditions precedent for bringing and maintaining this action have been performed or will be performed by Plaintiff.

## FIRST CLAIM
(BREACH OF CONTRACT)

14. To the extent necessary, JNE incorporates the paragraphs above.

15. JNE performed all obligations pursuant to Kiewit's Subcontract.

16. Kiewit, however, has failed to pay the Debt Due, despite repeated requests. Such failure constitutes a breach of the parties' agreement

17. Accordingly, JNE has suffered damages as a result.

## SECOND CLAIM
(QUANTUM MERUIT / UNJUST ENRICHMENT)

18. To the extent necessary, JNE incorporates the paragraphs above.

19. JNE provided and supplied required materials that it fabricated ("Construction Efforts" or "**CEs**") as required and requested by Kiewit, for Kiewit to perform and complete

its contractual obligations under the Prime Contract or otherwise, which served to benefit and improve the Project accordingly. Without JNE's CEs, Kiewit could not have fully performed and completed its obligations under the Prime Contract in the absence of said CEs.

20. Kiewit (and the Owner) have therefore benefitted from JNE's CEs.

21. Kiewit, however, has failed and refused to pay JNE for its CEs despite repeated requests.

22. Accordingly, JNE has suffered damages as a result of such failure to pay, and Kiewit has been unjustly enriched.

### THIRD CLAIM
(MILLER ACT PAYMENT BOND)

23. To the extent necessary, JNE incorporates paragraphs 1 – 22 above.

24. Travelers is obligated, pursuant to the Bond, to pay JNE for its CEs, which Kiewit has failed to pay, including changes authorized and performed, furnished in the prosecution of the work provided for in the Prime Contract.

25. Travelers has also failed to pay after receiving the Bond Claim in a timely manner, requiring commencement of this action.

26. Travelers is therefore obligated to pay JNE pursuant to the Miller Act, 40 U.S.C. § 3133 *et al.*

### REQUEST FOR RELIEF

Plaintiff therefore requests the following relief, jointly and severally against all Defendants:

1. Damages in an amount to be proven at trial, similar or equal to the Debt Due stated above, yet subject to adjustment up or down as so proven;

2. Costs of suit incurred;

3. Attorney fees;

4. Interest at the maximum permissible rate; and

5. Other and further relief as the Court may deem just, proper and appropriate, including leave to amend, for reasons which include joining other parties.

6. In the event removal or a stay is requested and / or required (*e.g.,* for ADR), that this Court retain jurisdiction and JNE maintains the ability to enforce its statutory and federal rights by way of entry of any such award without reservation at a future date.

DATED this 20th day of May 2022.

>PILLAR LAW PLLC
>***Seth Millstein***
>Seth Millstein, WSBA #34627
>Attorney for United States of America for the Use and Benefit of J. Nelson Enterprises, Inc.
>1601 Fifth Ave., Ste 1800
>Seattle, WA 98101
>Telephone: 206.724.0200
>Email: seth@pillar-law.com